UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL N. KAYE,   No. 08-12570

    Plaintiff,   District Judge Nancy G. Edmunds

v.   Magistrate Judge R. Steven Whalen

ACME INVESTMENTS, INC.,
ET.AL.,

    Defendants.
                                              /

**REPORT AND RECOMMENDATION**

Before the Court is *Defendants Acme Investments, Inc., Michael Courtney and Laurie Courtney's Motion For Dismissal Pursuant to FRCP 12(b)(1) & (6)* [Docket #4], which has been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend the following:

1.     The motion for dismissal of the claims under 42 U.S.C. §4852d should be GRANTED, dismissing this claim WITH PREJUDICE.

2.     Pursuant to 28 U.S.C. § 1367(c)(3), the Court should decline supplemental jurisdiction over Plaintiff's remaining state law claim of retaliatory lease termination, dismissing this claim WITHOUT PREJUDICE.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On July 2, 2007, Plaintiff Michael N. Kaye, then an apartment tenant of Defendant Acme Investments, Inc. ("Acme"), received notice of his lease termination, including an eviction date of August 3, 2007. *Complaint, Docket #1*, pg. 3 of 6.[1] Plaintiff alleges that the

---

[1]The background facts are drawn from both the complaint proper and an attached July 30, 2007 letter to Defendant Acme's counsel.

-1-

termination was precipitated by an argument stemming from his demand for a new refrigerator, claiming further that he was informed by Defendant's counsel that he was being evicted because he was a "'troublemaker.'" *Id.* Plaintiff alleges that upon receipt of the eviction notice he immediately began researching his "rights as a tenant," discovering that Defendant had been non-compliant with the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("RLBPHRA") by failing to disclose "the possible presence of lead-based paint used in the building." *Id.* Plaintiff informed Defendant's counsel on July 30, 2007 that he had filed a formal complaint with Environmental Protection Agency ("EPA") and intended to sue Defendant Acme as well as Acme's resident managers, Michael and Laurie Courtney. *Id.* Plaintiff also alleges that during the month of July, 2007, he requested but did not receive lead disclosure information but was told by Defendant Laurie Courtney that "the EPA had been to the apartment years before but said everything was fine." *Id.* at ¶6. Plaintiff alleges that he vacated the premises on August 5, 2007. *Id.* at ¶¶3, 8.

Plaintiff, proceeding *pro se*, filed suit in this Court on June 17, 2008, alleging violations of the RLBPHRA, 42 U.S.C. § § 4851 *et seq.* as well as retaliatory termination of his lease.[2] Plaintiff alleges that at no time during the course of his "nearly two-year[]" apartment tenancy did Defendants provide him with lead paint disclosure information as required by RLBPHRA. *Complaint* at ¶¶1-4. Plaintiff states that while living at the apartment, one of his two children was "conceived, brought to full term, and lived in the residence for one full year, while a second child was conceived," alleging that "[a]ll the while, the children could have been exposed to lead." *Id.* at ¶4. Plaintiff alleges that as a result of Defendants' non-compliance, he "incurred a very large moving expense as well as

---

[2] In the letter attached to his Complaint, Plaintiff claims that "[t]his is obviously a case of retaliatory eviction." Giving this *pro se* pleading a liberal construction, I will allow that Plaintiff has pled a state law count of retaliatory lease termination.

time lost from work, stress on his pregnant wife, possible exposure to lead by both a child and an unborn baby, and a violation of [his] right to know about such risks posed by [Defendants'] building." *Id.* at ¶12.

In his response to the present motion [Docket #7], Plaintiff describes the above alleged damages, adding, "We have all suffered from negligent infliction of emotional distress," apparently referring to a substantive state law claim that was not pled in the original Complaint.

## **II. STANDARD OF REVIEW**

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. A complaint must set forth a basis to conclude that subject matter jurisdiction exists. In this regard, Fed.R.Civ.P 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory," and bare assertions of legal conclusions are insufficient. *Scheid v. Fanny farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). The Sixth Circuit has recognized that such pleading requirements are mandatory, even for *pro se* litigants. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). A court "should not have to guess at the nature of the claim asserted." *Id.* When a defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that

if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. V. Twombley,*—U.S.—, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court set forth what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. The Court held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level. . .on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is *plausible* on its face." *Twombly*, at 1974 (emphasis added).

### III. ANALYSIS

#### A. Claims Under RLPHRA, 42 U.S.C. § 4852d

"The RLPHRA was enacted in 1992 in an effort . . . 'to develop a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expeditiously as possible' and to 'educate the public concerning the hazards and sources of

lead-based paint poisoning and steps to reduce and eliminate such hazards.'" *Mason ex rel. Heiser v. Morrisette,* 403 F.3d 28, 30 (1st Cir. 2005)(*citing* 42 U.S.C. § 4851a(1),(7)). RLPHRA provides "the statutory framework to require the disclosure of information concerning lead hazards upon the transfer [or lease] of residential property." *Id.*

42 U.S.C. §4852d(a)(1) states in pertinent part:

"[B]efore the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall

(A) provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection Agency under section 406 of the Toxic Substances Control Act [15 U.S.C.A. § 2686];

(B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor.

42 U.S.C. §4852d; 40 C.F.R. § 745.107.

The statute contemplates a private right of action for violations, stating that "[a]ny person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times *the amount of damages incurred* by such individual."§4852d (b)(5)(3) (emphasis added). In order to demonstrate a violation of the statute, a plaintiff must show that (1) he was a lessee, (2) defendant was a lessor who failed to make the proper disclosures under 40 C.F.R. § 745.107, "(3) the leased property was target housing,[3] and (4) the lease contract was signed after" the "regulatory

---

[3]"Targeted" refers to housing built before 1978. *Lead; Proposed Requirements for Disclosure of Information Concerning Lead-Based Paint in Housing* 59 FR 54984, 54984.

effective dates."[4]  *Sipes ex rel. Slaughter v. Russell*, 89 F.Supp.2d 1199, 1202-1203 (D.Kan. 2000).

Defendants, acknowledging that "[a]ll tenants are entitled to receive notice of the presence of lead paint in accordance with 42 U.S.C. §4852d," argue that "a private right of action only occurs when an individual has 'damages incurred.'" *Defendants' Brief*, *Docket #4* at 7 (citing 42 U.S.C. 4852d(5)(b)(3)).  Conceding that Plaintiff did not receive notice, Defendants contend nonetheless that they were not aware of any "'lead based paint and/or lead based paint hazards.'" *Defendants' Brief* at 6, 8 (*citing Docket #4* at Exhibit E.). Defendants also point out that Plaintiff has failed to even allege that he was exposed to lead. *Defendants' Brief* at 6.

As a general proposition, a plaintiff must show actual, non-speculative damages in order to recover a monetary award. *See e.g., Johnson v. Jones,* 149 F.3d 494, 507 (6th Cir.1998) (holding that a court should not award damages that are "wholly speculative"); *Chires v. Cumulus Broadcasting, LLC*, 543 F.Supp.2d 712, 721 (E.D.Mich.,2008), quoting *Ensink v. Mecosta County General Hospital,* 262 Mich.App. 518, 525, 687 N.W.2d 143 (Mich.App.2004) ("'A party asserting a claim has the burden of proving damages with reasonable certainty'"); *In re Whitt,* 79 B.R. 611 (Bkrtcy.E.D.Pa.1987)(technical and *de minimis* violations of a bankruptcy stay are not compensable without a showing of actual damages);  *Apperson v. Fleet Carrier Corp*., 879 F.2d 1344, 1352, fn.8 (6th Cir. 1989)("uncertain and speculative nature of Plaintiffs' actual damages" requires dismissal of an antitrust case).  Indeed, the clear language of §4852d (b)(5)(3) itself refers to "damages

---

[4] Under 40 C.F.R. § 745.102, the effective dates are September 6, 1996 "[f]or owners of more than four residential dwellings" and December 6, 1996 "[f]or owners of one to four residential dwellings."  § 745.102(a-b).

incurred," indicating that there must be *actual* damages, not hypothetical, speculative, or even nominal damages.[5] Of course, a plaintiff also has the burden of proving, beyond speculation, that the defendant's misconduct is the proximate cause of any claimed injuries. *Chires, supra*.

Under *Sipes, supra,* Plaintiff has facially pled the four elements of a claim under 42 U.S.C. §4852. However, under Rule 12(b)(6), he has not sufficiently or plausibly stated a viable claim for damages. Again, the Supreme Court in *Twombley, supra*, cautioned that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Under even the most liberal reading of this Complaint, Plaintiff has not shown that he has suffered any actual damages as the result of the Defendants' technical violation of RLBPHRA.

First, there are no economic damages that were proximately caused by the Defendants' alleged failure to comply with the notice provisions of § 4852d. Plaintiff's claim that he was forced to move as a result of Defendant Acme's non-adherence to the disclosure provisions of §4852d (thus incurring moving expenses and lost job time) is

---

[5] *See Sipes ex rel. Slaughter v. Russell*, *supra*, 89 F.Supp.2d at 1202 ("The plain language of the statute and the regulation provide a private cause of action for *compensatory damages*, court costs, attorney fees and witness fees."(Emphasis added)); *McCready v. Main Street Trust, Inc*., 2008 WL 3200651, *3 (C.D.Ill.,2008) ("Given the language of the statue [RLPHRA], focusing on the costs *incurred* by a plaintiff, this court has no reason to believe that the statute even contemplates the awarding of nominal damages when no costs have been incurred by Plaintiffs as a result of the alleged violation of the statute. Thus, this court concludes that nominal damages are not available to Plaintiffs as a remedy.").

without merit.⁶ He was forced to move because the Defendants gave him a notice of eviction. Paragraph 12 of the Complaint states that "as a result of the non-compliance of defendants, the plaintiff incurred a very large moving expense as well as time lost from work." However, this allegation is contradicted by a letter attached to the Complaint in which Plaintiff, still residing at the Defendant Acme's apartment on July 30, 2007, acknowledged that the grounds for the termination of his tenancy were unrelated to the alleged lead based paint non-disclosure. *Complaint* at pg. 3 of 6; *Docket #4*, Exhibit B, C. In fact, Plaintiff admitted he was unaware of the lead-based paint disclosure statute until he began researching his rights as a tenant *following* the July 2, 2007 notice of eviction (requiring him to leave the premises by August 3, 2007). *Id*. at Exhibit B. By Plaintiff's own admission, Defendants' alleged non-compliance with §4852d is not the "but for" cause of Plaintiff's move, and he is therefore not entitled to moving expenses. Further, he does not explain why Defendants are responsible for the fact that he now pays higher rent.

At oral argument on this motion, the Plaintiff contended that if it had not been for his discovery of the notice provisions of the RLBHRA, and his concern for the health of his wife and son, he would have stayed in the apartment and contested the eviction notice, rather than moving to a new apartment. However, while he might have had at least an arguable claim of retaliatory termination (see Sec. B, *infra*), it is far from certain–without resorting to speculation–that he would have successfully avoided eviction. Again, claims for damages cannot be speculative. *Twombley, supra*; *Chires, supra*. Furthermore, Plaintiff stated at oral argument that some time within the approximately one-month period between the time he received the eviction notice and the time he actually moved, the Defendants informed him

---

⁶The Court also considers Plaintiff's allegation in his response to this motion that he paid "significantly higher rent" at his new apartment. *Docket #7*.

verbally that no lead paint was used in his apartment, and his wife and son were tested for lead exposure and found to be within normal limits. Yet, he elected to move rather than to stay and contest the eviction notice. He moved not because of concern about lead paint, but because he was evicted.

The Complaint does not set forth a plausible claim of physical injury, instead alleging only "*possible* exposure to lead by both a child and an unborn baby." (Emphasis added). Plaintiff does not allege that he himself was exposed to lead. In any event, he has not alleged that he or any member of his family has been diagnosed with or treated for a condition related to lead exposure, and in fact, he conceded at oral argument that very shortly after he received the eviction notice, his wife and son were tested for lead exposure, and they were fine.[7]

Plaintiff's claim for "emotional distress" damages is similarly dubious, and is likewise undermined by his admission that after he learned of the statutory notice requirement, he remained in the apartment for over a month after his termination notice, and even beyond the date he was directed to vacate the premises. *Docket #12* at ¶10; *see also Complaint* at ¶3. The Defendants informed him verbally that the premises, which was built in the 1960's, did not contain lead-based paint. Moreover, within that month, Plaintiff's family tested within normal limits for lead. Any short-term concerns he had for their health would be speculative and, at most, minimal.[8] To survive a Rule 12(b)(6) motion, the facts

---

[7] At least one federal court has held that where a plaintiff neither has an inspection done nor uncovers the presence of lead paint, he or she is ineligible to recover compensatory damages. *McCready v. Main Street Trust, Inc., supra*.

[8] In his response to this motion, the Plaintiff has for the first time claimed "negligent infliction of emotional distress." To the extent that he is now raising this as a separate, substantive claim under Michigan law, it must be rejected. First, he did not plead it in his original Complaint, and he has not sought leave of the Court to amend his

set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Twombley, supra*, 127 S.Ct. at 1964-65. Here, the Plaintiff's claim for emotional distress is conclusory and speculative.

Because Plaintiff has not put forth a plausible, non-speculative claim that there were actual "damages incurred," or that any damages were proximately caused by the Defendants, the Defendants are entitled to dismissal under Rule 12(b)(6). *Bell Atlantic v. Twombley, supra*.

### B. Retaliatory Termination of Plaintiff's Lease

Independent of the 42 U.S.C. §4852d allegations, Plaintiff's July 30, 2007 letter to Defendants' counsel, attached to the Complaint, also alleges that his lease was terminated in retaliation for his demand for a new refrigerator. Defendants, noting that Plaintiff held a month-to-month lease for 22 months prior to the eviction notice, argue that a landlord is "permitted as a matter of law to terminate the tenant's month-to-month tenancy at any time

---

Complaint, as required by Fed.R.Civ.P. 15(a). Secondly, it would be futile to grant Plaintiff leave to amend to add this count. A claim of negligent infliction of emotional distress ("NIED") must include the following elements:

> "(1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not present, at least shock 'fairly contemporaneous' with the accident."

*Aureus Holdings, Ltd. v. City of Detroit*, 2006 WL 1547639, *9, FN26 (E.D.Mich.,2006)(Cohn, J.)(*citing Hesse v. Ashland* Oil, Inc., 466 Mich. 21, 34, 642 N.W.2d 330, 337 (2002)). Even generously assuming that the first element had been met, Plaintiff has failed to allege the second element, that he experienced actual physical harm as a result of his shock in discovering that he or his family had possibly been exposed to lead-based paint.

without explanation other than to say that the tenancy has ended." *Defendant's Brief* at 6. Accordingly, Defendants request that this claim be dismissed with prejudice under Rule 12(b)(6).

Michigan case law states that "a landlord who serves a notice to quit upon a month-to-month tenant in retaliation for the tenant's assertion of rights may be culpable under M.C.L. §600.5720." *Freon Villa v. Meadors,* 117 Mich.App. 683, 689, 324 N.W.2d 133, 135 (Mich.App.1982).

> M.C.L. §600.5720(1) states in pertinent part:
>
> "A judgment for possession of the premises for an alleged termination of tenancy shall not be entered against a defendant if . . . . (a) . . . the alleged termination was intended primarily as a penalty for the defendant's attempt to secure or enforce rights under the lease or agreement or under the laws of the state, of a governmental subdivision of this state, or of the United States."

Plaintiff's allegation that his lease was terminated because he demanded the replacement of a malfunctioning refrigerator states an "attempt to secure or enforce" either contractual and/or statutory rights. M.C.L. §554.139(1)(b).[9]

Assuming that the Plaintiff's claims under 42 U.S.C. §4852d are dismissed, his state law claim of retaliatory termination of his lease should be dismissed without prejudice, permitting him to pursue his landlord-tenant action in state court. "When a plaintiff's federal

---

[9] Michigan's implied warranty of habitability statute requires that "[i]n every lease or license of residential premises, the lessor or licensor covenants . . . . [t]o keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located . . ." M.C.L. §554.139(1)(b). *See Belgarde v. Askim*, 636 N.W.2d 916, 918 (N.D. 2001)(A tenant's claim concerning a non-working refrigerator stated a breach of implied warranty of habitability claim).

claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion." *Schirrick v. AU Sable Valley Community Mental Health Authority* WL 373038, 7-8 (E.D.Mich.,2006)(Lawson, J.)(*citing Blakely v. United States,* 276 F.3d 853, 860 (6th Cir.2002)); 28 U.S.C. § 1367(c)(3). Although dismissal of the federal cause of action creates a presumption toward declining jurisdiction over the state claims, "[t]he district court's decision to exercise supplemental jurisdiction . . . depends on 'judicial economy, convenience, fairness, and comity.'" *Blakely,* at 863 (*citing Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996)). Because Plaintiff's remaining claim is governed exclusively by Michigan law, the Court should decline supplemental jurisdiction. *Renaissance Center Venture v. Lozovoj,* 884 F.Supp. 1132, 1136 (E.D.Mich.,1995)(Hackett, J.).

## IV. CONCLUSION

For these reasons, I recommend the following:

1. The motion to dismiss the 42 U.S.C. §4852d claims under Fed.R.Civ.P. 12(b)(6) should be GRANTED, and the claim DISMISSED WITH PREJUDICE.

2. Pursuant to 28 U.S.C. § 1367(c)(3), the Court should decline supplemental jurisdiction over Plaintiff's remaining state law claim of retaliatory termination of his lease, dismissing this claim WITHOUT PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.CT. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          s/R. Steven Whalen
                                                          **UNITED STATES MAGISTRATE JUDGE**

**Dated: October 31, 2008**

**CERTIFICATE OF SERVICE**

**The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 31, 2008.**

                                                          **s/Susan Jefferson**
                                                          **Case Manager**